DAMS *v.* VINTON CO.

MASTER AND SERVANT—NEGLIGENCE—ASSUMED RISK.

> Plaintiff, an experienced employee of a wrecking company, was not entitled to recover for injuries sustained while he was engaged in wrecking a building by reason of the defective or weakened condition of defendant's derrick from which he improperly ordered one of the cranks removed, and, having notice of the defective state of the derrick and of the excessive weight of the girder that the men were lowering, attempted to check its descent with a rope that pulled plaintiff against and into the machine.[1]

Error to Wayne; Collingwood, J., presiding. Submitted October 5, 1915. (Docket No. 5.) Decided December 21, 1915.

Case by Jacob Dams against the Vinton Company for personal injuries. Judgment for defendant on a directed verdict. Plaintiff brings error. Affirmed.

*Ormond F. Hunt* and *Matthew H. Bishop,* for appellant.

*Keena, Lightner, Oxtoby & Hanley,* for appellee.

MOORE, J. This action is brought to recover damages for personal injuries received by plaintiff while in the employ of the defendant. At the close of the case for the plaintiff, the court directed a verdict in favor of the defendant. The case is brought here by writ of error.

---

[1] On assumption of risk of injury from defect in simple tool, see note in 51 L. R. A. (N. S.) 337.

As to assumption of risk of defective tool, machine or appliance where the defect is obvious but its importance not appreciated, see note in 13 L. R. A. (N. S.) 691.

There are several assignments of error, but the important question is: Did the court err in directing a verdict for defendant?

Plaintiff avers the negligence of the defendant was twofold:

(1) Suitable machinery in good repair should have been furnished him.

(2) Plaintiff, being taken from his usual course of employment and placed in a position of hazard and danger, which were not understood or fully appreciated by him, was entitled to warning and instruction commensurate to the menace.

Each of these propositions was argued orally and in the briefs at great length.

The president and manager of the defendant company, Mr. Vinton, at the time of the trial, was dead. Over objection the plaintiff was allowed to testify about conversations with him and the directions Mr. Vinton gave him. This was clearly incompetent under the statute. The record shows that plaintiff at the time of the accident was 47 years old. He had been for many years in defendant's employ; upwards of 10 years of the time as carpenter's foreman. The defendant had a contract to tear down an eight-story building, the inside of which had been nearly destroyed by fire. In doing this work a derrick was used. It was the claim of the plaintiff that he was unfamiliar with the use of a derrick, and that this one was defective, in that one of the cogs of the wheels on the end of the shaft was partly gone, and the cranks used to turn the shaft did not properly fit on the shaft. Nevertheless, under the direction of the plaintiff, the derrick was taken to the eighth floor and set up, and was used for several days, by him and the men under him, to lower material to the bottom floor, the loads varying in weight, some of them reaching 500 pounds. Plaintiff says the handles or cranks of the derrick were too

loose, and they were sent to the shops to be repaired; that when they were returned they were too tight, and an attempt was made to remedy this trouble by filing; but that the workman who was doing this was sent to some other work before it was finished. The roof of the building was sustained by steel trusses. The plaintiff's claim is that, when he got through with the work a carpenter should do, he told Mr. Vinton he should send a man who understood steel work, and that Mr. Vinton told him to go on with the work, and that he unwillingly did so. One end of the rope on the derrick used to lower the article was wound around one of the shafts in such a way as to act as a snub rope.

We quote from the testimony of the plaintiff:

"It was in the small wheel where the wheel was broke out, with one-half a tooth out. After the elevators was taken down, Mr. Vinton directed me to cut the trusses up. I was told to cut this girder in two pieces, and I said we could not do that. I said in two pieces it was too heavy. The trusses was about six ton, and I told Mr. Vinton I thought it should be cut into four or five pieces, and he said in return: 'That is too much work. It takes too much to cut that iron up, too much expense.' And told me to cut it into two pieces, and then he said, 'If you can't do them in two pieces, you must take it in three pieces. It costs too much in expense.' And I cut them in three pieces. The pieces were about 20 feet long and about 6 feet high, and was composed of angle iron.   *   *   * When the girders or trusses was cut in three pieces, each piece would weigh about two tons.   *   *   *

"We take and put on top of the pulley, and hang it on here, and that other end we hang on this iron, and start to turn her, and here we hoist it so that we get it down on the floor, right on the sides of the derrick, and after we get him on the side, and we loosen it up, and sling over the derrick on one edge, and then we raised it so that we get it down plumb so that it hung up endwise by the derrick. We took that truss from the bottom so that over the machine, where we turned the winch, over the drum, I got the truss high

enough so we pushed it out and started to lower it down, and got the truss so far that he could not turn more with this crank, so he stopped. The truss was right against the handle where he turned; he could not turn where the truss hangs for his handle. It happened this way, that the truss swings more on the left side than the right side, so the right side, the crank was free, and the left side was against the truss, so that he could not turn, we could not lower, the truss hangs right in place. Then I told the two men to stop the machine. I told them they had to look out now, we would be in danger above this crank, and I say: 'Lutsky, take your handle off.' Lutsky was on the west side—the left side. I face the derrick. I told Lutsky, 'Take your handle off now, so long as we get the truss down that you get back again your handles.' And King holds tight, and I said, 'Hang on,' and 'I hang on to the rope and you hang on.' I hold the snub rope. I help him to hold it this way, and he helps a little too. It was like a brake. That derrick hasn't a brake, and used the rope in place of the brake.

"After Lutsky had taken his handle off, I told King, 'Now we start, just to easy slow down,' so he started to turn. Of course, it was a little hard, and I pulled on my rope too. I held my rope so much as I could, but it was two tons heavy, and we got about four feet down, which takes six or seven minutes. It was pretty slow, and at once the handle slips off. King's on the right side, and, so quick as the handle slips off, it went down. That rope gives me a push, and pulled me to the machine, and I got this arm between the two cog-wheels, and at the same time the drum of the machine break all in pieces, and went up in the air, and the thing comes down and break the leg."

The plaintiff received very severe injuries.

It is apparent from the record that we have the case of a man of mature years, of sufficient experience and intelligence to be made a foreman of woodworkers, who is set to work using a machine of simple construction to lower articles of various weights with a machine the condition of which he had knowledge. And he also had knowledge of the weight of the articles to be low-

ered. He was giving the orders, and, knowing the above facts, and also claiming to know that the cranks to the derrick were not properly fitted, he deliberately directs that one of the cranks be removed.

The occurrence is a very regrettable one, but, unless we are to establish a new rule of law, we must affirm the judgment. See *Coleman* v. *Cartage Co.*, 174 Mich. 231 (140 N. W. 539), and the cases cited therein.

The judgment is affirmed.

BROOKE, C. J., and PERSON, KUHN, STONE, OSTRANDER, BIRD, and STEERE, JJ., concurred.